**CHARLS v CLEVELAND (city) et**

Common Pleas Court, Cuyahoga Co

Decided January 24, 1939

Jones, Day, Cookley & Reavis, Cleveland, for plaintiff.

Henry S. Brainard, dir. of law, Edward Blythin and Joseph N. Crowley, asst. directors of law, Cleveland, for Cleveland (city).

Frank T. Cullitan, county prosecutor and Sol S. Denaceau, asst. county prosecutor, Cleveland, for Board of Education.

## OPINION

By HURD, J.

The plaintiff brings this suit as a taxpayer of the city of Cleveland against the city, as a municipal corporation, Harold H. Burton, as mayor, Henry S. Brainard as director of law, G. A. Gesel, as finance director, Henry C. Miller, as clerk of council and Morton S. Zaller, Felix T. Matia, Mary L. Forrest, and Lockwood Thompson, as members of the board of elections of Cuyahoga county, praying for injunctive and other relief.

The applicable prayer of the petition is that the court find and declare Ordinance No. 1388-38 invalid, void and of no legal force and effect; that a special election held on the 21st day of December, 1938, sustaining said ordinance by a popular vote of the people, be declared a nullity and of no legal force and effect; that certain mortgage bonds authorized by said legislation and by said special election be declared not to be valid obligations of the city and not a valid lien against any of the real or chattel property of the city; and for such other relief as in the premises is considered just and equitable.

The case has been submitted on the pleadings, original and supplemental stipulations of fact and the oral testimony of the plaintiff. Counsel for the respective parties have presented the case by extended oral argument in addition to the filing of voluminous briefs supporting the respective contentions of the parties and the case is now before this court for final determination on the merits.

Pertinent parts of the stipulations filed herein necessary to an understanding of this decision are as follows:

Errata:—The correct name of the last mentioned attorney in the above case is Saul S. Danaceau.

"1. The general bonded indebtedness of the city of Cleveland is now, and at all times mentioned in the petition was, in excess of the 1% and 5% limitations provided by general law for the issuance of general obligation bonds of said city.

"2. The city of Cleveland now owns and operates, and for many years has owned and operated, a public utility, to-wit: an electric generating station, and transmission and distribution system, including substations, the product and services of which are and are to be supplied to said city and its inhabitants. Said system's existing facilities are in need of substantial rehabilitation and the system requires the addition of supplemental generating facilities in order that its present peak loads may be protected by proper reserve generating capacity and city owned institutions serviced. The council and the administrative offices of said city prepared and studied many plans for the improvement and extension of said utility, and in connection therewith submitted proposals to the Federal Emergency Administrator of Public Works. When the final plans were approved by said council and administrative officers, the same were presented to said Federal Administrator (hereinafter referred to as P.W.A.), together with an application for allowance of a federal grant to the city of Cleveland in the approximate amount of Two Million Five Hundred Thousand Dollars ($2,500,000) as a part of a total project of approximately Five Million, Five Hundred Thousand Dollars ($5,500,000). Tentative approval of said project was given by P.W.A. prior to the introduction of Ordinance No. 1388-38 hereinafter referred to.

"3. Ordinance No. 1388-38 was introduced at a meeting of the council of the city of Cleveland held on August 10, 1938, and said ordinance as introduced at said meeting was published verbatim in the City Record, the official publication of the city of Cleveland, of August 11, 1938.

"4. Thereafter and prior to September 1, 1938, public hearings were held in respect of said ordinance, at which meetings certain amendments of said ordinance were proposed.

"5. At a meeting of the council held September 1, 1938, said proposed amendments to Ordinance No. 1388-38 were agreed to by the council and they were published in full in the City Record of September 2, 1938. Said amendments were made in the fourth 'Whereas' clause and in Sections 2 and 4 of said ordinance.

"6. At said meeting of the council held September 1, 1938 said Ordinance No. 1388-38 as then and there amended was passed by the council and on the same date approved by Harold H. Burton, mayor of the city of Cleveland.

"7. Said ordinance was published in full in the City Record of September 7, 1938."

Among other stipulations is one to the effect that a special election on Ordinance No. 1388-38 was held December 21, 1938. The total vote cast was 124,051, 88,678 votes were cast in favor of the Ordinance and 34,894 votes cast against the Ordinance. The cost of said special election for which the city of Cleveland is liable was $32,066.46.

The grounds on which plaintiff predicates his claim to the effect that the legislation passed by the council and the subsequent special election whereby the same was upheld by the voters is void and of no effect, are as follows:

"(a) Ordinance No. 1388-38 is invalid because it was not published in the City Record in final form at least one week before its passage as required by Section 186 of the charter of the city of Cleveland.

"(b) The referendum election of December 21, 1938 on Ordinance No. 1388-38 was invalid because the absent voters' ballots for said election were not printed and in the hands of the board of elections ready for distribution thirty days before said election as is required by the provisions of the General Code, and Section 15 of the city charter.

"(c) The referendum election on Ordinance No. 1388-38 was invalid because a supplemental petition fixing the date of February 14, 1939 was duly filed and had the legal effect under Section 57 of the city charter of suspending the ordinance fixing the date of December 31, 1938 as the date for the election.

"(d) The referendum election on Ordinance No. 1388-38 was invalid because the ballot title used in said election was false, in that it stated that no tax funds might lawfully be used for the payment of the bonds authorized by said ordinance, was argumentative and not descriptive of the ordinance."

We shall consider these grounds in the order named.

Considering the first ground (a) the complaint of the plaintiff is based upon a claimed violation of Section 186 of the charter of the city of Cleveland which reads as follows:

"Passage of Franchise Ordinances.

"Section 186. No ordinance making, amending or renewing a grant to construct or operate a public utility, or to extend the appliances or service thereof, shall be adopted by the council until adequate public hearings shall have been held on such ordinance, and until at least one week after its publication in the City Record in final form."

In order to have a full understanding of the problem here presented it is well to understand that the city receives its power to pass an ordinance such as the one under consideration from **Art. XVIII, §12 of the Constitution,** which reads as follows:

"Any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

Cognate sections of **Art. XVIII** are §§4, 5 and 6, particularly §5, which requires that action to "acquire, construct, own, lease or operate a public utility" be taken by ordinance which shall not take effect until after 30 days from its passage in order to permit the holding of a referendum election thereon.

The ordinance adopted by council contains two essential features, namely (1) an authorization for the present issue of bonds, and (2) a franchise which shall be effective only in the hands of a purchaser at a foreclosure sale in the event that there is a default in payment of the bonds.

Counsel for the city, in their brief, have denominated this as "an **in futuro** franchise" which seems to us to be aptly descriptive of the franchise feature of the ordinance because it does not take effect **"in praesenti"** and can only be effective in the future in the somewhat doubtful event that the city defaults in its bonds and the property is purchased at foreclosure. In other words, it appears to us that the franchise feature does not apply

to the city's rights in the situation but to the rights of a purchaser at a foreclosure sale.

The stipulation of facts hereinbefore set forth clearly shows that the ordinance was published in full in the City Record of August 11, which is, of course, more than one week prior to its passage on September 1st. If nothing further had been done in this connection the argument here presented by the plaintiff could not be raised. But the stipulations also show that four amendments were proposed after the first publication of the ordinance in full on August 11th which were agreed to by council on September 1st, the date on which the ordinance was passed, and that the ordinance was passed with these four amendments without having been published in final form as amended in the City Record at least one week prior to its passage. It seems to us that any intelligent approach to the problem here presented requires a consideration of these four amendments. The first amendment is as follows:

"On the first page in the first line of the last paragraph beginning with the word 'Whereas,' insert the word 'tenth' in the blank before the word 'day.' "

This referred to the date of the certificate of the director of finance.

The second amendment was made in Section 2, relating to the mortgage bonds whereby the word "of" was changed to "in" and the words "One Thousand Dollars ($1,000)" were inserted so that it then read "in the denomination of One Thousand Dollars ($1,000)."

The third amendment occurred in Section 4 relating to the method of payment of said mortgage bonds and was to change the word "all" to "only such" in describing certain outstanding bonds for which revenues were pledged. Said last described bonds were the subject of the last amendment "also made in Section 4" which thereby itemized rather than merely totaled certain outstanding revenue bonds. No amendment was ever made in Section 8 which has to do with the granting of the franchise above mentioned.

The sections of the charter relating to franchise grants are 181 and 190, inclusive, and also so far as any presently operated franchise is concerned, Section 36. The latter section forbids the passage of a franchise ordinance as an emergency measure.

Quite obviously these four amendments, as above stated, had no relation to that

part of the ordinance granting the franchise. These amendments affected only what might be termed the bond feature of the ordinance and in the opinion of the court were only trifles of detail for corrective purposes only and did not in any way change the purpose, intent or object of said ordinance as originally published before passage. The ordinance with the amendments was published in full in the City Record of September 2, the date after its passage. We have reached the conclusion after a study of this claim of the plaintiff that the matter and things here complained of are minutiae" of detail and not of such serious import as to justify this court in setting aside the ordinance or the will of the people as expressed by their votes in a special election.

There are other reasons which we consider it unnecessary to detail at any great length because of the view herein expressed why we believe this claim of the plaintiff is not well founded. To mention one, we believe that Section 186 of the charter and other similar provisions were primarily intended to prevent any council from granting to any independent public utility as distinguished from one owned by the city, a franchise for the use of the streets and public thoroughfares of the city at rates therein fixed which might be excessive without granting to the public at large a full and complete opportunity to be informed upon the terms of the proposed franchise and being so informed that an opportunity would be presented for public hearings and public protests. We believe that this and similar provisions were never intended for a municipal public utility and it is only because of Art. 18, §13 of the Constitution which provides for the issuance of mortgage bonds beyond the general limit of the bonded indebtedness of the city pledging the property of the municipal utility including a franchise (emphasis ours) for the payment thereof without the incurrence by the city of any liability other than the pledge of said property that the franchise feature of this legislation is given any consideration in relation to Section 186. We doubt very much that Section 186 applies to a situation such as is here presented but assuming that it does have application we have reached the conclusion that the amendments made have no application to the franchise feature of the ordinance, and being mere trifles in respect to the other features of the ordinance, are not sufficient in law to sustain

the claims made in respect thereof by the plaintiff herein.

Coming next to a consideration of ground (b) above set forth, inasmuch as counsel for plaintiff abandoned this claim in open court by stating that he now considered the question involved a "moot question" we shall not give the same any particular attention other than to state that in our opinion the absentee voters ballot provision of Section 15 of the city charter does not have application to a special election such as was held in the instant case but applies only to primary and general elections.

Coming now to a consideration of ground (c) we believe that the plaintiff must stand or fall upon a correct construction of Section 57 of the charter of the city of Cleveland, which provides as follows:

"Upon a receipt of the certificate and certified copy of the proposed ordinance, the clerk shall certify to the fact to the council at its next regular meeting. If an election is to be held not more than six months nor less than thirty (30) days after the receipt of the clerk's certificate by the council, such proposed ordinance shall then be submitted to a vote of the electors. If no such election is to be held within the time aforesaid, the council may provide for submitting the proposed ordinance to the electors at a special election to be held not sooner than thirty days after the receipt of the clerk's certificate. If a supplemental petition, signed by five thousand (5,000) certified electors, in addition to those who signed the original petition, be filed with the clerk asking that the proposed ordinance be submitted to the voters at a time indicated in such petition, the council shall provide for a special election at such time. The sufficiency of any such supplemental petition shall be determined, and it may be amended, in the manner provided for original petitions for proposing ordinances to the council. If no other provision be made as to the time of submitting a proposed ordinance to a vote of the electors, it shall be submitted at the next election."

Our conclusion based upon an analysis of this Section 57 construed together with Section 60 of the city charter is that council undoubtedly has the power to set the date for a special election not sooner than 30 days or more than six months after the filing of the clerk's certificate on the

sufficiency of a referendum petition, provided that there is no legally scheduled election to be held not more than six months or less than '30 days from the date of the certification by' the clerk. This power and authority is clearly given to council by the third sentence of Section 57 above quoted, which reads as follows:

"If no such election is to be held within the time aforesaid the council may provide for submitting the proposed ordinance to the electors at a special election to be held not sooner than 30 days after the receipt of the clerk's certificate."

If we were to hold with the contention of the plaintiff that the fourth sentence of Section 57 granted an exclusive right in the signers of a supplemental petition in addition to those who signed the original petition to set the date of a special election we would be, in fact, nullifying the clearly expressed grant of authority to council to fix said date of a special election. We believe that such was not the intent of the fourth sentence of this provision but rather the intent was to permit signatory electors to such a supplemental petition to fix a time for the special election in the event that council for any reason failed to act, but whether this observation is true or false it certainly could not have been the intent of the framers of the charter and the people who voted it up to permit the nullification of such an important provision written in plain understandable, simple language which authorizes council to set the date of the election. We believe it would be a strained construction of Section 57 to give precedence or greater emphasis to the fourth sentence concerning the supplemental petition of the electors over the other provisions of this section. It would appear that the framers of this section attempted to put in chronological order the procedural steps to be taken by council upon the receipt of the certificate of the clerk certifying to the council that the original referendum petition filed is sufficient. We believe that this section could be and probably should be clarified so as to leave no doubt in the mind of any person of its meaning. We have no doubt of the intent of the framers of the charter in drawing this amendment and no doubt as to the conclusion which we have reached.

Coming now to ground (d) and the last ground of complaint set forth above, namely, that the ballot title used was false or misleading, the language complained of is "for the payment of which no tax funds may lawfully be used." By a reference to the context of the ballot title it is clear that this refers to payment of the bonds. In other words the sense of the sentence is that no tax funds may lawfully be used for the payment of these bonds. This matter was the subject of a special hearing before the Honorable Judge Alva R. Corlett on application of the plaintiff for a temporary injunction. While it is true that Judge Corlett overruled this motion without an opinion, this court, hearing the case on the merits, is not bound in any way by Judge Corlett's action in the premises and we approach this matter with the thought only of reaching an independent conclusion in respect thereof. The contents and preparation of the ballot title to be used in an election such as was held are governed by Section 66 of the charter, which reads as follows:

"Ballots—Election Results.

"Section 66. Ordinances, or parts thereof, submitted to vote of the electors in accordance with the initiative and referendum provisions of this charter shall be submitted by ballot title. There shall appear upon the official ballot a ballot title, which may be distinct from the legal title of any such proposed or referred ordinance, and which shall be a clear, concise statement, without argument or prejudice, descriptive of the substance of such ordinance, or part thereof. The ballot title shall be prepared by the committee if petitioners if for an initiated ordinance, and in all other cases by the director of law."

It is clear from a reading of this section that the ballot title shall be a clear, concise statement without argument or prejudice, descriptive of the substance of such ordinance or part thereof. As we construe this section it refers to the substance of the ordinance or any part thereof and does not have application to any after condition which might conceivably arise in respect of the operation of said municipal light plant or any connection with the bonds issued under and by virtue of the ordinance. A searching analysis of the ordinance nowhere discloses the authorization of the use of any tax money for the payment of the mortgage bonds. The clear intent and purpose of the ordinance and the clear intent and purpose of the constitutional provision providing for the issuance of mortgage bonds for the construction or improvement of a municipally own-

ed utility is that the property only of that utility shall be pledged for the payment of the bonds. The full faith and credit of the city is in no wise pledged nor is there any obligation upon the city at any time to use tax funds either in the payment of the principal or the interest on the bonds. In the event that at some time in the future the city should fail to meet the payment of the bonds from the revenues derived from the operation of the plant, and in the event that a foreclosure should ensue the only claim that any bondholder could assert would be the proceeds of such foreclosure sale. We freely concede the possibility that at some time in the future some city administration might by some process of transferring funds from one fund to another use tax funds to meet some obligation or attempt to do so. No one of us can prophesy as to what might be attempted in the future, but we believe that any such use or attempt would be clearly illegal, contrary to the provisions of the constitution and to the plain provisions of this ordinance. The ordinance certainly does not expressly or impliedly authorize the use of tax money or tax funds for the payment of the principal or interest on the bonds. We think the language is somewhat argumentative but on the other hand we can not escape the inevitable conclusion that as a fact it is descriptive of the ordinance, and we draw the legal conclusion from an examination of the authorities that the city is without authority to use tax funds in the payment of the principal or interest on the bonds.

Entertaining this view we believe that on this ground alone the court would not be justified in setting aside the ordinance or the vote of the people sustaining the same.

A few observations may appropriately be applied to the entire case. As we view the position of the court in this case it is similar to the position occupied by this court in the case of **State ex Crotty, a taxpayer v John A. Zangerle, 9 OO, 427.** In that case this court set aside the original Ogrin act as passed by the legislature as being in conflict with the **Constitution of Ohio.** This decision was later affirmed by the Supreme Court. In the instant case we are called upon to determine whether or not the ordinance under consideration, together with the manner and method of its adoption, is in conflict with the charter of the city, which is the fundamental law of the city, as the Constitution is the fundamental law of the state. We think we may aptly quote a part of that opinion as being applicable to the situation here confronting the court.

Page 428:

"In approaching a consideration of the questions here involved we are mindful of the fact that it is not the province of the court to consider any questions of policy with respect to this or any other legislation claimed to contravene the Constitution. The people in their wisdom have adopted a Constitution providing for three separate and distinct divisions of governmental functions, the executive, the legislative and the judicial. Each separate branch is supreme in its own sphere of activity, subservient only to the will of the people as expressed in the Constitution and the laws thereunder. While each must be independent in the exercise of its own functions and prerogatives, each must respect the rights, functions and prerogatives of the other branches of the government.

"Therefore when a question such as this comes before the court for final determination it is not the duty of the court to question the wisdom of the legislation but rather to determine if it is in conformity with the provisions of the Constitution. If it is so in conformity the legislation must stand. If it contravenes the Constitution the legislation must fail and the Constitution prevail.

"However, the courts will not declare a statute void merely upon a suggestion of conflict with the Constitution. Our Ohio Supreme Court has said: 'It is a principle firmly imbedded in our jurisprudence that it must be a clear infraction of the Constitution which will authorize the courts to intervene and overthrow an act of the legislature.' **Railway Co v Wells, 65 Oh St, 315.**"

And so in this case it is only if that which has been done here by the city council and the people of the city, as expressed by their vote, is clearly in contravention of the city charter that the court would be justified in granting the injunction setting aside the legislation and the will of the people.

Able counsel for the plaintiff have urged upon the court the test set forth in the opinion of Mr. Justice Roberts, in United States v Butler, 297 U. S., 1, referred to in the case of **City of Sandusky v City Commission, 56 Oh Ap, 284, 9 OO, 382,** wherein the following language was used:

Pages 290-291:

"There should be no misunderstanding as to the function of this court in such a case. It is sometimes said that the court assumes a power to overrule or control the action of the people's representatives. This is a misconception. The Constitution is the supreme law of the land ordained and established by the people. All legislation must conform to the principles it lays down. When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate the judicial branch of the government has only one duty—to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former. All the court does or can do is to announce its considered judgment upon the question. The only power it has, if such it may be called, is the power of judgment. This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with or in contravention of the provisions of the Constitution; and having done that, its duty ends."

When we apply this test which, of course, must have our complete approval, what do we find? Does this legislation square with the city charter?

It is our conclusion that it does so square with the city charter. The most that can be claimed is that there were here some technical irregularities having to do with form and not substance.

An examination of the cases cited and other cases wherein the courts have set aside legislation such as is here under consideration wherein the people have placed their stamp of approval on the same by the use of the ballot box, discloses for the most part that in such cases there was something going to the substantive rights of the people, something very material, having a direct bearing on the legislation. Take for example the case of the **City of Sandusky v City Commission, supra,** relied upon by counsel wherein the court set aside legislation authorizing the sale of notes and bonds to provide funds for the purpose of construction of a municipal light plant because the ordinance and resolutions authorizing them were not preceded by compliance with the provisions of the municipal charter requiring complete plans, specifications and estimates relating thereto to be sumbitted to and approved by the city commission before submission to the electors for adoption; we find that this was something going to

the substance of the legislation, a material condition precedent was not complied with. The court in that case was of the opinion that "if the complete plans, specifications, profiles and estimates required by the heretofore quoted portion of Section 15 of the charter had been first submitted to the city commission, the cost of the light and power plant proposed thereby might so far have exceeded in amount the estimated $1,440,000 that a bond issue therefor would not have been approved by the electors." If this court were confronted with a similar proposal of a material omission this court would unhesitatingly set aside the legislation, even though it had the vote of the people.

We can not find in the Sandusky case, which is so much relied upon by plaintiff, a remote similarity of facts to those existing in the instant case. The omission in that case was such as to vitiate the legislation **ab initio.** We find no such situation here. According to our view the matters for the most part complained of relate to form and not substance, which might be likened to the ephemeral shadows which pass lightly across the landscape on a summer's day. We believe that this court would be doing a violence to well founded principles of judicial construction if we were in this instance to set aside the legislation which finally, like the charter itself, has had the stamp of approval of the voters in a special election held for that single purpose. We should like to say, however, that there was justification for bringing this suit and that it serves a very useful purpose in having a judicial determination of the issues involved. We may be in error in our conclusions expressed in this opinion. It is our duty as we view it to bring to the consideration of the questions involved the best of our understanding and ability. This we have attempted to do without any effort to present any elaborate exposition of the legal principles or any detailed discussion of the applicable cases. The case has been presented by most able counsel on both sides. No case was ever in our experience, more ably presented or argued, and if perchance we are in error, both court and counsel may have one consolation in the fact that there are "higher courts beyond" who will no doubt promptly correct our errors if any we have made in arriving at the conclusions herein set forth.

Entertaining the views herein expressed the judgment of the court will be that the injunctive relief prayed for to declare Ordinance No. 1388-38 invalid, void and

of no legal force and effect, and to declare that the special election and the result thereof are nullities and of no legal force and effect; and to declare that said mortgage bonds and each of them are not valid obligations of the city of Cleveland and that said mortgage is not a valid lien against any of the real or chattel property of the city of Cleveland, and that said mortgage, franchise, and each of said bonds are void and of no legal force or effect, must be denied and the petition of plaintiff dismissed at plaintiff's costs; for all of which the plaintiff may be allowed proper exceptions.